Max Scheman, Plaintiff, *v.* Alexander Schlein et al., Defendants.

Supreme Court, Special Term, New York County, June 27, 1962.

*Bertram D. Fisher* and *Elliot Ira Miller* for plaintiff. *Lewis, Herrick & Whitebook* (*Maurice Whitebook* of counsel), for defendants.

Jacob Markowitz, J. This is a motion to dismiss the counterclaims for alleged insufficiency or, in the alternative, to strike out the request for punitive damages.

Paragraphs 3 through 10 of the answer are first stated as justification for the alleged libelous letters referred to in the complaint and then are made part of the counterclaims. They narrate the basis for defendants' charge of intentional infliction of mental distress. Then by paragraph 15 physical injury and pecuniary damage to defendants, as the consequence of such course of conduct, are alleged. These allegations of the first counterclaim substantially state that defendants were tenants of an apartment in a building of which plaintiff was owner or co-owner; that defendants were entitled to the protection of the New York State Emergency Housing Rent Control Law and the Rent and Eviction Regulations promulgated thereunder; that plaintiff embarked upon a course of conduct " designed by him to disturb, harass and upset the defendants for the purposes of either bringing about the removal of the defendants from said apartment or of requiring them to consent to increases in the maximum rent of said agreement ".

It is also contended that plaintiff deliberately and willfully committed acts of misconduct, with full knowledge of defendant Alexander Schlein's illness ("a stroke"), which acts were designed to achieve plaintiff's end, i.e., to destroy defendants' health, to force them to vacate their apartment and to force them to expend money for counsel in defense of their rights.

It further asserts that plaintiff's daughter and son-in-law took possession of the apartment above defendants' apartment and, in consort with and in furtherance of the purposes and designs of the plaintiff, have created disturbing noises and sounds, which were and are heard in defendants' apartment, particularly in the late hours of the night.

It is further alleged that plaintiff, for said purposes, committed many various acts, including telephone calls to defendants in the late hours of the night, threats to bring unfounded litigation against them unless they consented to a rent increase, etc., as the result of which defendants suffered physical, mental and nervous distress.

Plaintiff contends that, if the alleged acts he is charged with in the first counterclaim constitute a wrong for which defendants have a remedy, the remedy is one for a prima facie tort and as such is insufficient as it fails to plead special damages.

If the cause of action, as plaintiff contends, is one for prima facie tort, and if it failed to plead special damages, it would undoubtedly be fatal to its sufficiency (*Roger* v. *McCloskey,* 305 N. Y. 75, 80–81). Thus, the first issue to be determined is whether the first counterclaim is a traditional or a prima facie tort. The court invokes generally the use of a traditional tort remedy rather than the prima facie tort concept to correct a wrong. However, if a traditional tort right is not available, the courts then generally allow and apply the doctrine of prima facie t^rt.

In the court's opinion, the first counterclaim establishes, for pleading purposes, a good cause of action for a traditional tort, under the recently expanded categories of such torts. See *Ruza* v. *Ruza* (286 App. Div. 767) wherein the court pointed out that where reliance is had on unlawful and tortious acts (pp. 769–770) "the remedy is not in prima facie tort. * * * Consequently, it is not surprising that the remedy need rarely be invoked, for ' the categories of tort ' are many, *and development within the categories is progressive indeed* ". (Italics supplied.)

The cause of action, alleged in the counterclaim, is that now often called intentional infliction of mental distress (see 1961 Annual Survey of American Law, p. 447 *et seq.*).

As the United States Court of Appeals for the District of Columbia aptly said in *Clarke* v. *Associated Retail Credit Men* (105 F. 2d 62) a case involving mental distress intentionally caused by the sending of letters, " unless we establish a right in the plaintiff we establish a privilege or immunity in the defendant (p. 64).   No one has a general license purposely to injure the bodies of others.  That mental means are used can be no excuse " (p. 66).  In *Ferrara* v. *Galluchio* (5 N Y 2d 16) the court said (p. 21) " Freedom from mental disturbance is now a protected interest in this State."

In *Halio* v. *Lurie* (15 A D 2d 62) the Appellate Division for the Second Department held that allegations that defendant wrote a letter to plaintiff for the purpose of causing her mental distress and that he succeeded in that purpose, made out a good cause of action for which general damages may be recovered and which requires no allegation of special damages.  The court said (p. 65) : " The second cause of action was dismissed because the learned Justice at Special Term considered it an attempt to plead a cause of action founded on a prima facie tort, without alleging that the plaintiff had sustained special damage  *  *  * Of course, no such pleading is necessary, if an injury has been alleged for which general damages may be recovered ".  The question " whether the intentional infliction of serious mental distress without physical impact can constitute an independent tort which is actionable per se " was " answered in the affirmative " (p. 65).  In the course of its well-reasoned opinion, the court pointed out that in the recent case of *Battalla* v. *State of New York* (10 N Y 2d 237) the prior requirement of physical contact or direct physical injuries in actions to recover for personal injuries resulting from negligence was abandoned.  In the *Battalla* case, a plaintiff was held to have a good cause of action for mental distress resulting from a negligent act of defendant, although no physical contact was involved.  It would be anomalous, indeed, if recovery could be had if the mental distress resulted from a defendant's *negligence*, but not if the distress was caused by a defendant's *intentional* acts.

Thus, even where one's claim is limited only to mental suffering intentionally caused by another and damage sustained thereby, it is unnecessary to invoke the concept and remedy of prima facie tort.

Plaintiff contends that the decision of *Halio* v. *Lurie* (*supra*) was subsequently limited by the same court, in *Alpert* v. *Gordon* (15 A D 2d 673) to cases where the *sole* object of defendant's conduct was to cause the plaintiff mental distress.  The sixth cause of action, to which that court's statement referred, was,

however, treated there as one for prima facie tort, the court stating that "The parties on this appeal consider the sixth cause of action to be based on prima facie tort" (p. 674).

Whether that court would have taken the same position were there not a concession that the sixth cause of action was a prima facie tort, cannot be answered by this court. However, we must recognize that the Appellate Division did make specific reference to the concession. Thus the limitation, if any, that the *Alpert* decision may be construed to impose upon the *Halio* case holding is that where the parties to an action themselves consider the cause to be one of prima facie tort and where there is some legitimate purpose to defendant's acts — some purpose other than solely causing mental distress — allegations of "special damages" are required. This limitation, apparently, was designed to bar recovery for every slight feeling of emotional distress one may incur in the course of day-to-day dealings in our complicated and often unfeeling society. Recovery is not to be allowed for "the slight hurts which are the price of a complex society". (*Knierim* v. *Izzo*, 22 Ill. 2d 73, 85.) However, for the purpose of pleading, an allegation of the infliction of severe mental distress is sufficient. If there is a failure of proof of this allegation at the trial the cause will be defeated. The capability of the medical profession in the psychiatric field to determine if severe mental distress has been inflicted is today recognized. No longer are claims based upon such testimony deemed "fictitious and speculative" (see *Mitchell* v. *Rochester Ry. Co.,* 151 N. Y. 107, 110 [1896], overruled by *Battalla* v. *State of New York,* 10 N Y 2d 237 [1961], *supra*).

In the instant case the first counterclaim attacked alleges that plaintiff's actions caused defendants "to become physically, mentally and nervously distressed and ill, * * * deprived defendants of the peaceful and quiet enjoyment of their apartment, * * * compelled defendants to employ and pay for the services of legal counsel, and * * * injured and damaged defendants in their person and their property." These allegations are sufficient to constitute "special damages" for the purpose of upholding the counterclaim as a proper pleading, even if it were deemed a cause of prima facie tort, rather than only an extension of a traditional tort.

The reference in some decisions and articles involving intentional infliction of mental distress, as a prima facie tort, is unfortunate — as heretofore indicated, the remedy for the wrong is the traditional tort. Also regrettable is the confusion as to the meaning of the term "special damages" in dealing with both the traditional and prima facie tort. It must be borne in

mind that " special damages " for pleading purposes must *not* be equated with pecuniary or out-of-pocket monetary loss in all cases. It must also be borne in mind that " special damages " need not be pleaded in a traditional tort. The " special damages " in pleading the intentional inflicting of mental distress causes need only be in the same manner as the pleading of " special damages " in other malicious and willful causes.

Plaintiff does not challenge the contention that the law will not suffer wrong, damage and injury without remedy. The plaintiff, nevertheless, asserts that there is no liability for a prima facie or traditional tort where the alleged wrongdoer's other motives are proper and lawful and his motives are not solely malicious and willful. Plaintiff cites *Reinforce, Inc.*, v. *Birney* (308 N. Y. 164) and *Beardsley* v. *Kilmer* (236 N. Y. 80) as authority for the above doctrine.

In *Reinforce, Inc.*, v. *Birney* (*supra*) Judge DESMOND [now Ch. J.], writing for the Court of Appeals, said (p. 169) : " If the doers, by means not in themselves unlawful, of acts not in themselves unlawful, have any *proper* purpose to serve, they are not liable for the damage they cause." (Italics supplied.) In *Beardsley* v. *Kilmer* (*supra*) the defendant was held not liable because one of his motives was to protect himself from the attacks which plaintiff had been making upon him in the newspaper for which plaintiff worked. The court held this was a proper and legitimate motive. This court does not quarrel with the above citations; in fact, agrees with them wholeheartedly. However, it must be borne in mind that the court's determination in each instance was *after trial*. Whether one's other motives are lawful or not is not properly determinable on a motion to dismiss the pleading for insufficiency but must generally await trial.

The instant situation is a motion to dismiss a counterclaim as a pleading, as distinguished from a decision after trial. The counterclaim alleges that plaintiff's motive was to force defendants, as the result of intentionally-inflicted mental distress, to give up the protection they enjoyed under the rent law by vacating their apartment or consenting to a rent increase. Such a motive is not a proper or legitimate one. Incidentally, the counterclaim does not allege that plaintiff had any other motives. It states a good cause of action.

The second counterclaim is based upon the facts alleged in the first counterclaim. It seeks to enjoin plaintiff from continuing the conduct complained of. It also states a good cause of action.

Plaintiff contends that punitive damages may not be recovered in the case of a prima facie tort. On page 11 of its main brief, plaintiff concedes that " Normally, in a suit for an intentional

tort based on maliciousness or other circumstances of aggravation, it is the rule that punitive damages may be recovered ". Since defendants do not plead a prima facie tort, but a traditional tort, within the framework of plaintiff's above quote, there is no need to consider plaintiff's contention, as it is inapplicable. The motion is denied in all respects.